AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 3:20-mj-00079 |
| | ) |
| | ) |
| Tracy Charles Nichols | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  11/01/2019 through 4/6/2020  in the county of  Multnomah  in the  District of  Oregon , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) | Distribution of controlled substances - methamphetamine and heroin. |
| 21 U.S.C § 843 (b) | Use of communication facilities in commission of offenses related to the distribution of controlled substance. |

This criminal complaint is based on these facts:

See affidavit, attached hereto

☑ Continued on the attached sheet.

By phone
*Complainant's signature*

Justin Hussey, SA, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  2:20   a.m./p.m.

Date: 04/07/2020

*Judge's signature*

City and state: Portland, Oregon

Honorable Stacie F. Beckerman
*Printed name and title*

DISTRICT OF OREGON, ss:       AFFIDAVIT OF JUSTIN HUSSEY

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Justin Hussey, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.  I am a Special Agent with the Department of Justice, Drug Enforcement Administration (DEA) and have been since July 2017. I am currently assigned to the DEA Portland District Office. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I have received specialized training from the DEA, to include a 20-week Basic Agent Training course in Quantico, Virginia. Prior to joining DEA, I worked as a Police Officer with the City of Hickory Police Department in Hickory, North Carolina, for approximately six years. Before that, I was employed as a Deputy Sheriff with the Burke County Sheriff's Office in Morganton, North Carolina, for approximately five and a half years.

2.  I submit this affidavit in support of a criminal complaint and arrest warrant for **Tracy Charles Nichols ("Tracy Nichols")**, for the offense distribution of a controlled substance – methamphetamine and heroin - in violation of 21 U.S.C. § 841(a)(1); and Use of a Communication Facility in Commission of Offenses Related to the Distribution of Controlled Substances – in violation of 21 U.S.C. § 843(b). As set forth below, there is probable cause to believe, and I do believe, that **Tracy Nichols** committed 21 U.S.C. § 841(a)(1); and 21 U.S.C. § 843(b).

/ / /

/ / /

### Applicable Law

3.  Title 21 U.S.C. §§ 841(a)(1), Distribution of a Controlled Substance, makes it illegal to possess with intent to distribute a controlled substance, such as methamphetamine and heroin. Title 21 U.S.C § 843(b), Unlawful use of a Communication Facility, makes it unlawful to use a communication facility, such as a cellular telephone, to distribute controlled substances such as methamphetamine and heroin.

### Statement of Probable Cause

4.  In November 2019, the DEA Portland District Office (PDO) Group D-50 (DEA D-50 or "Investigators") began investigating an individual suspected of distributing methamphetamine and heroin throughout the greater Portland, Oregon area. This investigation began as a result of information provided to investigators by a Confidential Source (CS). The CS has provided information to the DEA since 2019. The CS has prior convictions for Driving under the Influence of Alcohol, Reckless Driving and Assault. The CS is currently working for consideration against criminal prosecution for an offense committed within the state of Oregon. The CS has provided reliable information to the DEA that has been independently corroborated. As detailed herein, the CS has engaged in consensually recorded phone calls and text messages to some of the suspects under investigation that are described herein, and has conducted controlled purchases of drugs under the direction and supervision of Investigators.

5.  The CS offered information regarding the drug distribution activities of **Tracy Nichols**[1] and Rebecca SPARKS (SPARKS). The CS recalled seeing **Tracy Nichols** and SPARKS

---

[1] Tracy Nichols was recently indicted on drug related charges stemming from an HSI investigation separate from this investigation. Tracy Nichols is currently on Pretrial Release in connection with those charges.

in possession of large amounts of methamphetamine, heroin, and US currency in the past. The CS also provided phone number 503-975-1958 (Nichols' Phone) for **Tracy Nichols** and phone number 503-544-2072 (Sparks' Phone) for SPARKS. The CS stated that all orders were placed a day in advance and the code to place an order was, for example, two by two. The CS stated the first number indicated the amount of heroin requested and the second number is for the amount of methamphetamine. The CS added that placing an order the day before would ensure that **Tracy Nichols** and/or SPARKS would have the order on hand and available. The CS further stated that **Tracy Nichols** said he was not supposed to be doing any drug related business and that SPARKS was going to be handling all of that (meaning drug transactions) while **Tracy Nichols** was on Pretrial Release; nonetheless, **Tracy Nichols** continued to take orders from, and directly distribute to, the CS during the course of this investigation.

6. In January 2020, DEA-50, with the assistance of the Multnomah County Sheriff's Office (MCSO) Special Investigations Unit (SIU), directed the CS to place consensually recorded phone calls and text messages to **Tracy Nichols** at phone number 503-975-1958 (Nichols' Phone) to order methamphetamine and heroin. **Tracy Nichols** agreed over the phone to sell the CS two ounces of methamphetamine and two ounces of heroin. **Tracy Nichols** instructed the CS to meet at R&L Autosales LLC, located at 2375 SE 174th Avenue, Portland, Oregon to conduct the transaction. Investigators know this shop to be owned by **Tracy Nichols'** girlfriend and suspected drug distribution co-conspirator SPARKS and her mother, but operated by **Tracy Nichols**.

7. Prior to meeting with **Tracy Nichols** for the controlled buy, Investigators met with the CS at a predetermined location where the CS and CS's vehicle were searched for any contraband or excessive currency. Upon the search yielding negative results, Investigators

provided the CS with an electronic recording and transmitting device along with DEA provided funds to purchase the methamphetamine and heroin.

8.  Additionally, Investigators established surveillance in the area of the meet location in anticipation of the controlled purchase. Upon arrival of the CS, Investigators observed **Tracy Nichols** open the door to the auto shop. The CS then exited the CS vehicle and entered the auto shop. A short time later, Investigators observed the CS and **Tracy Nichols** exit the auto shop and enter into the CS vehicle. At the direction of Tracy Nichols, the CS drove **Tracy Nichols** to a third location to pick up the drugs. The two returned to the auto shop where **Tracy Nichols** transferred the drugs to the CS in exchange for the negotiated cash.

9.  During February 2020, DEA-50, with the assistance of SIU, directed the CS to place consensually recorded phone calls and text messages to **Tracy Nichols** on Nichols' Phone to negotiate a second controlled purchase of methamphetamine and heroin. Over the phone, **Tracy Nichols** agreed to meet with the CS to sell three ounces of methamphetamine and five ounces of heroin and instructed the CS to meet at the auto shop to complete the drug transaction. Prior to the CS meeting with **Tracy Nichols**, Investigators met with the CS and searched the CS and CS's vehicle for any contraband or excessive currency. Upon the search yielding negative results, Investigators provided the CS with an electronic recording and transmitting device along with DEA provided funds to purchase the methamphetamine and heroin.

10. Investigators established surveillance in the area of the auto shop in anticipation of the meeting between the CS and Tracy **Nichols**. Before the CS arrived, Investigators observed **Tracy Nichols** exit the auto shop and enter a silver Mercedes, bearing Oregon license plates DL0635B and drive away from the auto shop. Investigators observed the CS arrive at the auto shop. A few minutes later, Investigators observed the Mercedes return to the auto shop and pull

into the parking lot. Investigators observed the CS exit the CS vehicle and enter the Mercedes. Approximately one minute later, Investigators observed the CS exit the Mercedes and enter the CS vehicle. A subsequent debrief of the CS confirmed that **Tracy Nichols** transferred the drugs for the negotiated cash in the Mercedes.

11.  On April 6, 2020, Investigators executed a federal search warrant at Tracy Nichols's residence at 802 NE Faloma Road, Portland, Oregon and at the auto shop. A search of the residence revealed an undetermined amount of cash and two cell phones. The K-9 alerted to the odor of narcotics on the cash. At that time, **Tracy Nichols** was placed under arrest and subsequently transported to the DEA Portland District Office for processing.

12.  Once the search of the residence concluded, Investigators traveled to the auto shop where a second federal search warrant was executed. A subsequent search of the auto shop revealed a small clear plastic bag containing suspected methamphetamine which was located in a cabinet in the bathroom that separated the two offices, and two spare tires with similar cuts in each spare tire's sidewalls, indicative of the removal of large, concealed items (possibly narcotics). A K-9 alerted to the bathroom cabinet and one of the spare tires. The K-9 was not presented to the second spare tire. Investigators looked into the spare tire and observed what appeared to be loose methamphetamine, based on training, experience, and knowledge of the color, consistency and appearance of methamphetamine.

13.  I returned to the DEA PDO and interviewed **Tracy Nichols.** At the start of the interview, I read **Tracy Nichols** his Miranda Rights, via a DEA-13 (Miranda Warning Form), which he subsequently signed acknowledging he understood his rights. When asked about the small plastic bag of methamphetamine, **Tracy Nichols** admitted that it belonged to him. When Investigators asked **Tracy Nichols** about the spare tires, **Tracy Nichols** admitted that he was aware

that drugs were being transported in the spare tires. Furthermore, **Tracy Nichols** stated he was present at the auto shop when an unnamed individual was using the garage to remove narcotics from the spare tires. He claimed he never witnessed the narcotics being removed. He declined to provide any further statements regarding his distribution of methamphetamine or heroin.

## Conclusion

14.     Based on the foregoing, I have probable cause to believe, and I do believe, that **Tracy Nichols** committed the offense of distribution of a controlled substance – methamphetamine and heroin – in violation of 21 U.S.C. § 841(a)(1), and Use of a Communication Facility in Commission of Offenses Related to the Distribution of Controlled Substances – in violation of 21 U.S.C. § 843(b). I therefore request that the Court issue a criminal complaint and arrest warrant for **Tracy Nichols**.

15.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Sarah Barr, and AUSA Barr advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Request for Sealing

16.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the individual to be arrested is relevant to an ongoing investigation, and any disclosure of the individual's arrest at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously

jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

                                                           _By phone_

                                                          Justin Hussey
                                                          Special Agent
                                                          Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __2:20__ a.m/p.m. on April 7, 2020.

                                                          _Stacie F. Beckerman_
                                                          HON. STACIE F. BECKERMAN
                                                          UNITED STATES MAGISTRATE JUDGE